THOMAS LONGLEY & *al. versus* THE LONGLEY STAGE LINE COMPANY.

Where a corporation organized on the 29th of March, and again on the 4th of June following, and one who became a creditor of such corporation in the intervening time, consented as a stockholder to the new organization and to have the stock divided anew, and took shares in the new stock; it was held, that such creditor did not thereby forfeit his right to recover his debt against the corporation, if the jury came to the conclusion, that the plaintiff did not thereby intend to surrender, discharge or affect his claim against the corporation by consenting to a new organization of it.

THE action was brought by Thomas Longley, Benjamin Rackley and James Phillips against the defendants, for the price of two horses, purchased for the company and paid for by the plaintiffs, and for a sum of money paid to the Granite Bank for the defendants.

The case came before the Court on a motion for a new trial, filed by the defendants, because the verdict for the plaintiffs was against evidence.

SHEPLEY J. who presided at the trial, reported the evidence, the ground assumed by the defendants at the trial, and his instructions to the jury. It is unnecessary to state it here. It seems that the plaintiffs had been running a stage from Portland to Augusta through Standish, and had obtained a contract to carry the mail; that it was proposed to form an incorporated company who should take the property and run the stages; that a corporation by the name of the Longley Stage Line Company was established by act of the legislature in February or March, 1838, having informally commenced conducting the business from the first of February of that year; that the company organized on the 29th of March, 1838; and chose offi-

cers, and recorded their proceedings; that on the 4th of June, 1838, they "concluded to rub out and begin anew," and they again organized under the act of incorporation, and chose a new set of officers, and commenced their records anew in a new book. The claim of the plaintiffs arose out of transactions between March 29th, and June 4th, 1838. It did not appear that either of the plaintiffs were at the meeting of June 4th but each of them afterwards subscribed for some shares. Edward Little had not been a petitioner or stockholder until soon after June 4th, when he subscribed for one share, but at the time of the trial had become the proprietor of the principal portion of the stock.

The counsel for the defendants contended, "that the plaintiffs, being a part of those who on June 4, 1838, consented to organize anew on that day and to have the corporation commence its existence then, they could not afterwards themselves set up a claim against the company for the items named in the writ."

The presiding Judge on this point instructed the jury, that if the plaintiffs, on June 4, 1838, did understandingly, knowing the effect of what was done and voluntarily consenting thereto, intend to surrender their claims upon the company, they would find for the defendants; but that if they came to the conclusion, that the plaintiffs did not intend to surrender, discharge, or affect any of their claims against the corporation, by consenting to a new organization of it, they would find their verdict for the plaintiffs.

*Vose & Lancaster* argued in support of the grounds of defence taken at the trial; and cited, 2 Metc. 422; Sugden Vend. & Pur. 122 and cases there cited.

*Wells*, for the plaintiffs.

The opinion of the Court was drawn up by

SHEPLEY J. — This case is presented for consideration on a motion to set aside the verdict and grant a new trial, on the ground, that it is against the weight of the evidence.

The counsel for the corporation, which is principally represented by Edward Little, do not contend, that the organization of the corporation on the 29th day of March, 1838, with the act of incorporation, was not sufficient to prove the existence of the corporation from that date, as it respects all persons, who had not consented, that its first existence should be considered as commencing on the fourth day of June, following. They contend, however, that the plaintiffs did so consent, and cannot therefore be permitted to assert, that it had an earlier existence for the purpose of establishing claims against it, especially after a new stockholder had purchased under the expectation held out by the records, that it had not an earlier existence. If they could be charged with aiding in a double organization with an intention to conceal prior debts or liabilities of the corporation, or to hold out, in any manner, false appearances to a subsequent purchaser of the stock, they would not be allowed to set up any prior claims against it.

The testimony authorized the jury to conclude, that the corporation assumed the payment of the note to the Granite Bank given for money borrowed before the act of incorporation to carry on the business, which the corporation received and conducted after the 29th day of March. And that the plaintiffs paid the principal portion of that note. And that they purchased and paid for two horses for its benefit. In doing this, there is nothing to show, that they did not conduct fairly, and thereby obtain a just and legal claim against the corporation. After they had made the payments, and before the fourth of June, they might, for ought that appears, have brought a suit for it, and have recovered against the corporation. In what manner have they forfeited that right? They consented to regard the first organization as illegal, to organize anew, to permit the stock to be divided anew, to take new shares, and to act under the new organization for the future. They did not profess to surrender or to release any claims. And it does not appear, that they were aware their rights would be affected by considering the organization of the corporation as commencing on the fourth of June. If not fully proved, it might fairly be

inferred from the testimony, that they assented to the new organization under a misapprehension of law, and not from a desire to hold out false appearances, or from any other improper motive. And in doing so, they only acted as three among many members of the corporate body; and cannot therefore be legally held accountable for the acts of the corporation in making up records, which held out false appearances respecting the time of its first existence. They do not appear to have been present, or to have made any statements respecting the debts due from the corporation, when Mr. Little purchased. The effect of those proceedings and of the records may have been to induce him to conclude, when he purchased, that no debts did or could exist against the corporation before the fourth of June. But if all parties acted fairly and under a misapprehension of their legal effect, the law must decide upon their rights without regard to the party, who may prove to be the sufferer. The testimony shews, that it must have been a matter of notoriety, that a line of stage coaches had been running upon that route for two months before the fourth of June, and that the business had been managed by persons pretending to be an agent and directors of a corporation. This would seem to be sufficient to put a purchaser on his guard to inquire, whether there had not been debts contracted, and how far there might be a corporation existing and responsible for them.

Under such circumstances it is not perceived, that there is any just cause to complain, that the jury came to the conclusion, that the plaintiffs did not intend to surrender, discharge, or affect, any of their claims against the corporation by consenting to a new organization of it.

*Judgment on the verdict.*